## Commonwealth v. Butterfield, Appellant.

*Criminal law—Health law—Selling oleomargarine without license.*

On the trial of an indictment for selling oleomargarine without a license a conviction will be sustained where the evidence shows that the defendant took orders in the place where he resided, from various parties for oleomargarine in quantities ranging from five to ten pounds to each individual; that he sent these orders to a dealer in another state; that the dealer put up the orders in separate packages writing the names of the respective purchasers on the packages, that the packages were placed in wooden boxes, shipped to the defendant, who delivered them to the different purchasers; that the defendant paid

the dealer twenty cents a pound for the oleomargarine, and received from his customers twenty-two cents a pound, and that the difference was used for freight and charges, and this was known to the customers.

Argued Nov. 21, 1910. Appeal, No. 109, Oct. T., 1910, by defendant, from judgment of Q. S. Chester Co., Jan. Term, 1910, on verdict of guilty in case of Commonwealth v. Jesse S. Butterfield. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for selling oleomargarine without a license. Before HEMPHILL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which the prisoner was sentenced to pay a fine of $100.

*Error assigned* was in overruling motion in arrest of judgment.

*H. L. Shomo,* and *J. Frank E. Hause,* for appellant.— The oleomargarine was in bulk in the company's place of business. Upon receipt of the orders, the quantity called for in each order was taken from the general stock, was separately wrapped and labeled with the name of the purchaser. This act on the part of the company vested the title in the individual purchaser—not in Butterfield, and it was precisely what the law required to complete the transaction: Hutchinson v. Hunter, 7 Pa. 140; Com. v. Munk, 1 Pa. Superior Ct. 479; Schumacher v. Eby, 24 Pa. 521; Garbracht v. Com., 96 Pa. 449; Com. v. Fleming, 130 Pa. 138; Com. v. Hess, 148 Pa. 98; McKinney v. Wilson, 133 Mass. 131; Palmer v. Crosby, 77 Mass. 46; Sterne v. Filene, 96 Mass. 9; Com. v. Gardner, 16 Montg. County Rep. 171.

*A. H. Woodward,* with him *W. W. McElree* and *Robt. S. Gawthrop,* district attorney, for appellee.—Delivery either actual or constructive is an essential ingredient in a sale of personal property. An agreement to sell is only

executory until the contract is completed by delivery: Garbracht v. Com., 96 Pa. 449; Com. v. Fleming, 130 Pa. 138; Com. v. Hess, 148 Pa. 98.

We submit that defendant is guilty under the authority of Com. v. Leslie, 20 Pa. Superior Ct. 529; Com. v. Guja, 28 Pa. Superior Ct. 58; Com. v. Holstine, 132 Pa. 357; North Wales Boro. v. Brownback, 10 Pa. Superior Ct. 227; Com. v. Pollak, 33 Pa. Superior Ct. 600; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Com. v. Hecirrionic, 39 Pa. Superior Ct. 510.

OPINION BY PORTER, J., April 17, 1911:

The defendant was indicted for selling oleomargarine without a license, entered a plea of not guilty, and after a trial the jury rendered a verdict of guilty as indicted, and in connection therewith specially found the facts upon which the verdict was based. The defendant moved in arrest of judgment, upon the ground that the facts found were insufficient to sustain a verdict of guilty, which motion the court overruled and sentenced the defendant upon the verdict, from which judgment we have this appeal.

It is conceded that the defendant had no license to sell oleomargarine, and the only question presented is whether the facts found by the jury were sufficient to sustain a finding that he had sold oleomargarine in the county of Chester. The special verdict establishes that the defendant is a resident of Pennsylvania and has a place of business in the borough of Spring City, Chester county. The special verdict also finds that the defendant had, at the borough of Spring City, in the county of Chester, solicited and obtained from various parties orders for oleomargarine in quantities ranging from five to ten pounds to each individual; that said orders were in writing, signed by the respective individuals, directed to the John F. Jelke Company, of Camden, New Jersey, and directing said company to ship to the person giving the order, in care of this defendant, the quantity of oleomargarine desired, at a

price stated per pound. If the taking and forwarding of these orders had been the only thing done by this defendant the contention of his counsel upon this appeal would be well founded. The verdict did not, however, stop there; it proceeds to find the following facts with regard to the manner in which this defendant carried on his business. "That after receiving said orders from each of the respective purchasers the said defendant collected from each of them at the time, the price of the oleomargarine, together with the additional sum of two cents per pound upon the respective quantities of oleomargarine ordered. That the price paid for the oleomargarine varied in accordance with the grade from eighteen to twenty-two cents per pound, and the respective persons ordering the same paid to the defendant said price and an additional two cents per pound. That after receiving said orders and the money therefor the defendant transmitted the orders and the money received from the respective purchasers, except the two cents a pound retained by him, to the John F. Jelke Co., at Camden, N. J. The two cents a pound was retained by the defendant to cover the freight or express charges and the cost of handling the said oleomargarine. That upon the receipt by them of the money and orders for the said oleomargarine the John F. Jelke Co. at their place of business in Camden, N. J., made up the orders in the quantities desired by purchasers and marked the respective packages with the names of the respective purchasers. The names of the purchasers were written upon the separate packages in lead pencil, together with a statement of the quantities of oleomargarine contained in the package. There were no other words written upon the said packages, but the word 'Oleomargarine' was printed upon the wrapper of each of the respective packages. That the John F. Jelke Co. packed the oleomargarine which had been set apart and marked with the respective names of the purchasers in wooden boxes, each containing from sixty to eighty-five pounds of oleomargarine. That the box contained the orders of from six to

fifteen different persons separately wrapped and marked, and said wood box was then shipped by freight or express, addressed 'To J. S. Butterfield, Spring City, Pa.' . . . . That included in the said box and shipped with the said package of oleomargarine were small vials containing liquid coloring matter in number corresponding with the number of separate packages contained in each box. . . . That upon the receipt of said box and boxes at Spring City, Pa., the defendant, J. S. Butterfield, receipted for said oleomargarine to the railroad company or express company transporting the same and paid the freight or charges thereon. That thereafter the said oleomargarine contained in the said large box was delivered by a drayman to the photograph gallery of the defendant in Spring City, Pa.; the said drayman was hired by said defendant and paid by him for the hauling of the boxes from the freight or express office to the defendant's place of business. That upon the receipt of said box containing the said oleomargarine, in quantity from sixty to eighty-five pounds, as stated, and in separate packages containing from ten to fifteen pounds in each package, marked with the respective names of the purchasers thereof, the defendant broke open the box containing said oleomargarine and the respective packages thereof were then, upon their calling for the same at his place of business, delivered to the respective persons whose names were written upon the respective wrappers as hereinbefore stated. This defendant also upon some occasions took packages addressed to persons in the vicinity of his place of business and carried them to the homes of said persons and there delivered them. That the vials of coloring matter, shipped with the boxes containing the oleomargarine, were wrapped together in a package separate from the oleomargarine, and the defendant upon receipt by him of the oleomargarine; and after breaking open the box containing the same, broke open the package containing the vials of coloring matter, and with each package of oleomargarine, delivered as above stated, delivered also one vial of liquid coloring matter."

The facts thus found clearly establish that the sales made by this defendant were not sales in the original packages brought from another state and, therefore, no question of interstate commerce arises. Under the arrangement which this defendant made with his customers the dealer at Camden, N. J., was paid by this defendant, say, twenty cents per pound for oleomargarine in a box delivered to a common carrier at Camden, N. J., and consigned to this defendant at Spring City, Chester county, Pa. This defendant received the package, paid the freight, caused the goods to be taken to his place of business, there opened the box and taking out the several parcels which the package contained, delivered the goods to his customers. All connection of the New Jersey dealer with the transaction and the control of that company over the goods ceased when it delivered the package to the carrier at Camden, for this defendant had already paid for the oleomargarine. The New Jersey corporation had received for the oleomargarine twenty cents a pound, and when this defendant received the goods he proceeded to perform his contracts with his several customers by delivering to them the oleomargarine for which they had already paid him twenty-two cents a pound. This defendant was not the agent of the New Jersey dealer, nor was he the agent of the persons to whom he delivered the oleomargarine. He paid one price for the oleomargarine in New Jersey and sold it for a higher price in Pennsylvania. This involved no imposition on his customers, for the facts found by the special verdict reveal that they understood this arrangement. The defendant received for the oleomargarine two cents per pound more than he had paid. Out of this amount he had paid the freight. Whether this involved a profit or a loss concerned him alone, no other person had a right to call upon him for an account. All the parties were working together for a common purpose. The customers of this defendant agreed to pay him at a designated rate per pound for oleomargarine delivered at Spring City, they had paid him in advance the stipulated price, and

he complied with his several contracts, by making the delivery according to the contract. This was a sale in Chester county, Pa.: Com. v. Holstine, 132 Pa. 357; Com. v. Tynnauer, 33 Pa. Superior Ct. 604; Com. v. Hecirrionic, 39 Pa. Superior Ct. 510. The labeling of the several parcels, from six to fifteen of which were packed in the box containing the shipment, with the names of the purchasers to whom the defendant intended to make deliveries, while a convenience for the defendant in making such deliveries, cannot change the character of the transaction, and convert it into a sale to the several prospective purchasers at Camden, N. J.: Com. v. Guja, 28 Pa. Superior Ct. 58. The purchasers had contracted with this defendant for delivery of the goods in Chester county, and there he did deliver them. This case is in its facts stronger against the defendant than were those in the case of Com. v. Leslie, 20 Pa. Superior Ct. 529, by which we are of opinion that it is ruled. The assignments of error are dismissed.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by said court committed until he has complied with the sentence.

RICE, P. J., and HEAD, J., dissent.